

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2008

# Cisco Hunter v. Rowan Univ

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2300

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Cisco Hunter v. Rowan Univ" (2008). *2008 Decisions*. Paper 242.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2300
_____

LINDA CISCO HUNTER,

Appellant,

v.

ROWAN UNIVERSITY; DIANNE DORLAND,
Dean, Individually; JANE ROE; JOHN DOE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-1498)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2008

Before: McKEE, FUENTES, and JORDAN, *Circuit Judges*
_____

(Filed: November 12, 2008)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Linda Cisco Hunter appeals the District Court's grant of summary judgment in favor of Rowan University, Dianne Dorland, and John and Jane Doe defendants (collectively, "Appellees"). Hunter alleges that the District Court erred in granting summary judgment because she had adduced sufficient evidence for a reasonable jury to find that Appellees discriminated against her on the basis of race and age. We will affirm.[1]

I.      *Background*

Hunter is a Caucasian female who was born on September 18, 1947. She began full-time employment at Rowan in 1994. In 1995, James Tracey, the Dean of the College of Engineering, hired her to work in the Office of the Dean as an "Administrative Assistant 1" ("AA1"). (App. at 73A.) Her employment contract called for periodic reviews to determine if her contract would be renewed. Hunter served as an AA1 through the remainder of Dean Tracey's tenure at the College, which ended with his departure in

---

[1]The District Court had jurisdiction over Hunter's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The District Court had supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Egolf v. Witmer*, 526 F.3d 104, 106 (3d Cir. 2008). Accordingly, we inquire whether the record, viewed in the light most favorable to the non-moving party, "show[s] that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

July 2000.  While serving as an AA1 to Dean Tracey, Hunter received positive performance reviews.

Shortly after arriving in 2000, the new dean of the College of Engineering, Diane Dorland, told Hunter that, rather than serving in the Deans' office, Hunter would serve with the College's Outreach Coordinator.  Her status, pay, and benefits as an AA1 did not change.  Hunter moved to her new responsibilities in August 2000.  Shortly thereafter, the Outreach Coordinator, Melanie Basantis, went on maternity leave and Hunter assumed many of her duties as well.  After Hunter expressed concerns about her workload to Dean Dorland, Assistant Dean Steven Chin agreed to assume the functions of the Outreach Coordinator and became Hunter's immediate supervisor.  Dean Dorland, however, retained ultimate supervisory authority over Hunter and was also responsible for making recommendations to Rowan about whether to renew her contract.

On February 6, 2001, Chin evaluated Hunter for the first time.  He concluded that the quality and quantity of Hunter's work, as well as her compliance with deadlines, was unsatisfactory.  Hunter's union representative answered the evaluation by suggesting that Hunter's performance was a result of the lack of a job description and poor feedback.  In response, Rowan provided Hunter with a job description clarifying her responsibilities.

On April 22, 2001, Chin evaluated Hunter again and concluded that she still needed improvement.  Within days, however, Melanie Basantis gave Hunter a positive performance review.  Similarly, Dr. Ralph Dusseau, a member of the College faculty who

had also worked with Hunter, submitted a positive review of her work. Chin re-evaluated Hunter on September 24, 2001 and November 27, 2001. Both evaluations noted continued deficiencies in Hunter's work, and attached specific examples. In response, Hunter, asserted that she was "certainly trying to do the best [that she] c[ould]." (App. at 539A.) On December 6, 2001, Dean Dorland recommended that Rowan not renew Hunter's contract, and Rowan accepted that recommendation.

Aware that the Dean did not intend to recommend renewing her contract, Hunter negotiated a settlement agreement with Rowan before issuance of a formal recommendation.[2] That agreement provided that Hunter would receive a one year appointment outside the College of Engineering after her contract expired. Hunter's work at Rowan concluded on July 9, 2003, with the end of that appointment. In May 2003, Dean Dorland hired Maria Perez-Colon, a Hispanic woman born on August 29, 1958, as an AA1 to work in the Office of the Dean at the College of Engineering.

On March 31, 2004, Hunter filed a complaint against Rowan, Dean Dorland, and unnamed others, alleging various forms of unlawful discrimination based on race and age. Hunter asserted that the defendants had engaged in reverse racial and national origin discrimination, in violation of 42 U.S.C. §§ 1981 and 1983 and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* (the "NJLAD"). She also alleged that the defendants had engaged in a conspiracy to carry out racial discrimination in

---

[2]No one has suggested that the terms of the settlement agreement were such as to prevent the filing of the present suit.

violation of 42 U.S.C. § 1985. Hunter further alleged that the defendants had unlawfully

discriminated against her because of her age, in violation of the Age Discrimination in

Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA") and the NJLAD.[3] Finally, she

alleged that the defendants had unlawfully retaliated against her, in violation of the

NJLAD and federal law.

Following discovery, the District Court granted summary judgment for Appellees

on Hunter's federal claims for retaliation and for race, age, and national origin

discrimination. The District Court also granted summary judgment for Appellees on

Hunter's state law claims for race and age discrimination. The Court then declined to

exercise jurisdiction over Hunter's remaining state law claims for national origin

discrimination and retaliation. On April 26, 2007, Hunter filed this timely appeal.

## II.    *Discussion*

Hunter contests the District Court's decision to grant summary judgment on her

federal race and retaliation claims, and on her state law claims for race and age

discrimination.[4] Our analysis of all of those claims is governed by the burden-shifting

---

[3]Hunter abandoned her ADEA claim on appeal. (Appellant's Br. at 40 n.6.)

[4]In her brief, Hunter argues that the District Court failed to address her federal retaliation claim, but she does not further explain or argue that claim on the merits, merely stating that it is the same as a state law retaliation claim that she is "presently pursuing in the New Jersey courts after the district court declined to exercise supplemental jurisdiction." (Appellant's Br. at 52.) Hunter's cursory reference to her federal retaliation claim is insufficient to adequately raise it on appeal, and we do not address it in the discussion that follows. *See In re Suprema Specialties, Inc. Securities Litig.*, 438 F.3d at 256, 286 n.17 (3d Cir. 2006) (explaining that claims are waived when

test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir. 1997) (explaining that *McDonnell Douglas* applies to federal discrimination claims under §§ 1981 and 1983); *Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465, 479 (N.J. 1978) (noting that *McDonnell Douglas* is "a starting point in actions brought under the [New Jersey] Law Against Discrimination"). Under *McDonnell Douglas*, Hunter must first establish a prima facie case of discrimination. 411 U.S. at 802. If she meets that burden, Rowan must then "articulate some legitimate, nondiscriminatory reason for the [adverse action.]" *Id.* The burden then shifts back to Hunter to show that Rowan's reason is a mere "pretext for the ... discrimination." *Id.* at 804. This showing must be such that a "factfinder could reasonably either (1) disbelieve [Rowan's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Rowan's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). In conducting our analysis, we must be aware that "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).

---

they are not adequately explained in a party's opening brief).

*A.* *The District Court Did Not Err by Granting Summary Judgment for Appellees With Respect to Hunter's Race Discrimination Claims.*

Hunter first argues that the District Court erred by granting summary judgment in favor of Appellees on her federal and state law reverse race discrimination claims. Among other things, to establish her prima facie case of racial discrimination, Hunter must "present[] sufficient evidence to allow a reasonable fact finder to conclude ... that the defendant treated plaintiff 'less favorably than others because of [her] race.'" *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Because we agree with the District Court that Hunter has failed to meet that initial burden, we do not consider the other elements of her prima facie case, nor do we consider the remainder of the *McDonnell Douglas* burden shifting framework.

Hunter argues that a reasonable jury could find that Rowan's decision not to renew her contract was a product of discrimination because, first, the College of Engineering's administrative staff was exclusively white and a new Dean would want to diversify the staff; second, Chin was Asian-American, and Rowan's Provost and its President, who made the final decision not to renew her contract, were African-American; third the College's affirmative action guidelines were used to hire Perez-Colon; and fourth, Rowan surreptitiously recreated Hunter's extinguished AA1 position after her departure. Each and all of those assertions are inadequate on this record.

Hunter's first assertion, that Dean Dorland "might [sic] particularly eager to satisfy Rowan's ... need to 'diversify' its staff," (Appellant's Br. at 34), is purely speculative. *See Ridgewood Bd. of Ed. v. N.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (noting that "speculation and conclusory allegations" are insufficient to survive summary judgment). As to the second assertion, neither Chin's race, nor the race of Rowan's Provost and President, establish that the decision to fire Hunter was motivated by racial animus. *See Iadimarco*, 190 F.3d at 156 (explaining that "the race of the [evaluating] officials [does not] establish a prima facie case of discrimination by itself"). Third, although affirmative action guidelines may have been considered when Perez-Colon was hired, which was months after Hunter's transfer out of the College of Engineering and two years after she left the office of the Dean, Hunter has adduced no evidence suggesting that those guidelines were used at her expense. *See id.* at 164 (noting that a diversity memo does not, in itself, suggest discrimination). Finally, the notion that the timing of an opening in the Dean's Office was suspicious is not supported by the record. Rowan advertised for the administrative assistant position long after Hunter had last served in that office. In short, Hunter has adduced only her speculation and disappointment to meet her initial *McDonnell Douglas* burden.[5] That is insufficient.

---

[5]Because no reasonable jury could find for Hunter on her race discrimination claims, her 42 U.S.C. § 1985 claim also fails because that claim requires that the purported conspiracy be motivated by racial discrimination. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (explaining that a § 1985 conspiracy must be "motivated by discriminatory animus against an identifiable class").

*B.*     *The District Court Did Not Err by Granting Summary Judgment for Appellees with Respect to Hunter's NJLAD Age Discrimination Claim.*

Next, Hunter argues that the court erred by granting summary judgment for Appellees on her state law age discrimination claim. A prima facie case for that claim requires her to demonstrate that she "(1) belongs to a protected class, (2) was qualified for the position held, (3) was terminated despite adequate qualifications, and (4) was ... replaced with a candidate sufficiently younger to permit an inference of age discrimination." *Monaco v. American Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004).

Assuming *arguendo* that Hunter has established a prima facie case, Appellees have articulated a "legitimate, nondiscriminatory reason for the [adverse action]." *McDonnell Douglas*, 411 U.S. at 802. They have done so by producing evidence that Hunter's performance had become unsatisfactory. Thus, to prevail, Hunter must show that a reasonable jury could either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Hunter argues that she has met her burden because she received positive evaluations from some of her other supervisors, and because she had no performance issues prior to Dean Dorland's arrival, and further because she did not receive negative evaluations until after she complained about her workload in the Outreach Office.

9

However, on this record, none of those reasons "casts doubt on [Rowan's] contention that there was a legitimate business justification for letting [her] go." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 344 (3d Cir. 1990) (citation omitted). Indeed, Hunter herself has never meaningfully disputed the substance of Chin's negative performance reviews. Instead, when asked to respond to his concerns, she stated that she was "certainly trying to do the best [that she] c[ould]." (App. at 539A.) Such an assertion is not enough to survive summary judgment. *Keller*, 130 F.3d at 1109 (explaining that a plaintiff alleging unlawful age discrimination "cannot survive summary judgment ... simply by pointing to evidence that could convince a reasonable factfinder that [she] did as well as [she] could under the circumstances.")

Hunter's second argument also fails. The mere existence of positive evaluations by a supervisor does not give rise to the inference that negative evaluations from another supervisor were a pretext. *See id.* (explaining that to survive summary judgment a plaintiff must show that the defendant's proffered reason for a termination is "so plainly wrong that it cannot have been the employer's real reason"). Similarly, even if Chin's negative evaluations were initially prompted by Hunter's complaints about her workload – and it is sheer speculation that they were – Hunter has failed to create a genuine issue of material fact about whether the ultimate decision to not renew her contract was based on discriminatory animus. She has thus brought forth no evidence that would provide a reasonable jury with grounds to believe that her repeated poor evaluations by her direct

superior were a pretext for age discrimination or that those who decided against renewing her contract were discriminating against her because of her age.

*III.     Conclusion*

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Appellees.